IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHANDELLE A. CHAVEZ,

    Plaintiff,

vs.                                      No. 17-CV-813 JAP/SCY

CITY OF ALBUQUERQUE d/b/a FAMILY AND
COMMUNITY SERVICES DEPARTMENT,
DOUGLAS CHAPLIN in his personal and official capacity,
ELLEN BRADEN, in her personal and official capacity, and
ANDREW QUINTANA, in his personal and official capacity.

    Defendants.

**MOTION AND MEMORANDUM FOR PARTIAL JUDGMENT ON THE PLEADINGS**

      COME NOW Defendants, City of Albuquerque d/b/a Family and Community Services Department ("FCSD"), Douglas Chaplin, Ellen Braden and Andrew Quintana, (hereinafter "Defendants") and hereby file the following as their Motion and Memorandum for Partial Judgment on the Pleadings. Plaintiff has failed to state a claim for which relief can be granted on Count I, Violation of the New Mexico Whistleblower Protection Act. As such, Defendants respectfully request that this Motion be granted and Plaintiff's claim as set forth herein be dismissed. Plaintiff's counsel was contacted, but opposes this Motion.

      Plaintiff, a former employee of the City, has brought forth multiple claims against the City, Doug Chaplin, the acting Director of the City's FCSD, Ellen Braden, a Division Manager within FCSD, and Andrew Quintana, the Sr. Personnel/Labor Relations Officer within FCSD. Notwithstanding the utter lack of factual support for Plaintiff's claims that are not subject to this Motion and which will be addressed later in litigation, Plaintiff's Whistleblower Protection Act claim is deficient based on the allegations as pled. Specifically, Plaintiff has not pled sufficient

facts to survive the federal pleading standard regarding her Whistleblower Protection Act Claim (Count I).

## I. ALLEGATIONS TAKEN AS TRUE

1. Plaintiff began working for Defendant City in October 2003, as a Substance Abuse Counselor for the Metropolitan Detention Center (MDC). Amended Complaint ¶ 12.

2. In 2013, Plaintiff was transferred and began work in the FCSD within the Health and Human Services Division. Amended Complaint ¶¶ 29 and 30.

3. As a part of her job duties in the Health and Human Services Division, Plaintiff was tasked with conducting audits on various service providers that performed services within the Department. Plaintiff conducted two audits in 2013 regarding contracts Defendant City had with St. Martin's Hospitality Center and All Faiths. Amended Complaint ¶¶ 40 and 46.

4. Defendant City reimbursed St. Martin's Hospitality Center for the meals it provided to homeless residents. Amended Complaint ¶ 41.

5. During the 2013 audits, Plaintiff claims she believed that St. Martin's Hospitality Center was incorrectly charging Defendant City one and a half (1.5) times the amount that it cost to provide each individual a meal. Plaintiff alleges she noted the discrepancy in her report but was told to ignore the findings by Defendant Braden. Plaintiff alleges she did not question Defendant Braden's decision. Amended Complaint ¶¶ 42-45.

6. Additionally, during the 2013 audits, Plaintiff claims she believed All Faiths was incorrectly billing the City, Medicaid, and Children Youth and Families Division for their Safe House Program. Again, Plaintiff alleges she noted the discrepancy and was told by

Ms. Branden to ignore the findings. Plaintiff did not question this decision either. Amended Complaint ¶¶ 47-51.

7. Plaintiff claims that she ultimately did not object to the alleged practices nor object to the direction to change her audit findings in 2013, as she did not have the wherewithal to question her supervisor. Amended Complaint ¶¶ 45, 51.

8. Plaintiff conducted a similar audit of Defendant City's contracts with St. Martin's Hospitality Center and All Faiths in 2015. Plaintiff alleges she found the same discrepancies, as described *supra*, and again changed her findings in the report. Amended Complaint ¶¶ 52-53.

9. Again Plaintiff ultimately did not object to the alleged practices nor object to the direction to change her audit findings in 2015, as she did not have the wherewithal to question her supervisor. Amended Complaint ¶¶ 51, 53.

10. In June of 2015, Plaintiff took time off under the Family Medical Leave Act to care for her daughter who was diagnosed with a rare medical condition. Plaintiff took off between one to three (1-3) days per week but alleges she was required to perform the same amount of work she was assigned before. Amended Complaint ¶¶ 29, 54, 57-58.

11. On July 28, 2015, Plaintiff filed an EEOC complaint claiming the City of Albuquerque and Defendant Braden retaliated against her for taking the FMLA leave. Amended Complaint ¶ 59.

12. On September 28, 2015, Plaintiff filed a second EEOC charge alleging that the City of Albuquerque, Defendant Braden, and Defendant Quintana retaliated against her for filing the July 2015, EEOC charge. Amended Complaint ¶¶ 59-60.

13. Additionally, in September 2015, Plaintiff was placed on a Performance Improvement Plan (PIP).  It was explained to Plaintiff that the PIP was not disciplinary but a tool to improve her performance.  Amended Complaint ¶¶ 61-62, 67.

14. On November 4, 2015, a "Step 2 to Termination" meeting was held to discuss Plaintiff's PIP.  Amended Complaint ¶ 70.

15. On November 19, 2015, Plaintiff was given notice that she was under investigation for not meeting Defendants' expectations under her PIP in violation of Defendant City's Personnel Rules and Regulations.  Amended Complaint ¶ 72.

16. In December 2015, Plaintiff attended multiple training sessions required under her PIP.  Plaintiff, however, asserts that these training sessions were conducted only to discipline her.  Amended Complaint ¶¶ 74-77.

17. On January 19, 2016, Plaintiff was given a written reprimand for failing to comply with her PIP.  Amended Complaint ¶ 79.

18. Sometime in 2016, Plaintiff conducted a similar audit of Defendants' contracts with St. Martin's Hospitality Center and All Faiths as described *supra* (Fact Nos. 3, 5, 6, and 8) and believed Defendant City was being overcharged again.  This time, however, Plaintiff claims she refused to alter her findings within the audit.  Amended Complaint ¶¶ 52, 55-56.

19. During a meeting to improve Plaintiff's performance, Ms. Braden placed a condition upon Plaintiff that she needed to change the findings within the All Faiths audit.  Amended Complaint ¶ 90.

20. On April 11, 2016, Plaintiff was suspended without pay because she was "not following through with projects and meeting deadlines."  Amended Complaint ¶ 92.

21. On July 5, 2016, Plaintiff claims she was accused of misappropriating funds, and terminated on August 11, 2016.  Amended Complaint ¶¶ 94, 91.

## II. ARGUMENT AND AUTHORITIES

Defendants respectfully request that the Court dismiss Count I, Plaintiff's New Mexico Whistleblower Protection Act (WPA) claim because Plaintiff's allegations do not support that she engaged in activity protected by the Act.

### A.  Standard of Review.

When "evaluating a Rule 12(c) motion … the court applies the same standard used in deciding Rule 12(b)(6) motions to dismiss." *Inge v. McClelland*, No. 16-CV-1232 (JAP/LAM), 2017 WL 2829696, at *1 (D.N.M. June 26, 2017) citing *Atlantic Richfield Co. v. Farm Credit Bank of Wichita,* 226 F.3d 1138, 1160 (10th Cir. 2000) ("A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6).")  A "Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick,* 40 F.3d 337, 340 (10th Cir.1994). The court must accept all well pled factual allegations as true and consider the allegations in the light most favorable to the nonmoving party. *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006) *see Sprint Nextel Corp. v. Middle Man, Inc.,* 822 F.3d 524, 530 (10th Cir. 2016). "A motion for a judgment on the pleadings will be granted if the pleadings demonstrate that the moving party is entitled to judgment as a matter of law." *Am. Mech. Sols., L.L.C. v. Northland Process Piping, Inc.,* 184 F. Supp. 3d 1030, 1050 (D.N.M. 2016).

### B.  Plaintiff is Required to Plead Facts that State a Claim for Relief that is Plausible on its Face.

A complaint must "state a claim to relief that is plausible on its face" with short and plain statements of the claim that show the pleader is entitled to relief.  *Khalik v. United Air Lines,* 671

5

F.3d 1188, 1190 (10th Cir. 2012) citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ("A plaintiff must 'nudge [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss."); *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, the court must accept all well pled allegations as true, however, "mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice." *Khalik,* 671 F.3d at 1190-91 (citations omitted) (the court will disregard conclusory statements and focus on whether the "factual allegations plausibly suggest the defendant is liable"). If allegations are general and encompass wide swaths of conduct, much of which may be innocent, then a plaintiff has not nudged her claim across the line from conceivable to plausible. *Id.* at 1191. While "*Twombly* and *Iqbal* do not require that the complaint include all facts necessary to carry the plaintiff's burden,"… "the elements of each alleged cause of action help to determine whether [p]laintiff has set forth a plausible claim." *Id.* at 1192 (citations omitted). As discussed in depth below, Plaintiff has failed to meet this pleading standard.

### C.  Plaintiff's WPA Claim is Subject to Dismissal.

The WPA provides in relevant part that, "A public employer shall not take any retaliatory action against a public employee because the public employee:  communicates to the public employer or a third party information about an action or failure to act that the public employee believes in good faith constitutes an unlawful or improper act." NMSA 1978, § 10-16C-3(A). The WPA also provides that the public employer shall not retaliate against a public employee if she "objects to or refuses to participate in an activity, policy or practice that constitutes an unlawful or improper act." NMSA 1978, § 10-16C-3(C). A "retaliatory action" is defined as "taking any discriminatory or adverse employment action against a public employee in the terms

and conditions of public employment." NMSA 1978, § 10–16C–2(D). In general, "to establish a prima facie case in a retaliation claim, the plaintiff must prove (1) she engaged in a protected activity, (2) she was subjected to adverse employment action, and (3) a causal connection existed between the protected activity and the adverse employment action." *Gonzales v. New Mexico Dept. of Health,* 2000-NMSC-029, ¶ 22, 129 N.M. 586, 11 P.3d 550 (citation omitted).

Although New Mexico has not distinctly addressed the legal issue in this case,[1] the Court should analyze Plaintiff's claims using the federal burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817 (1973). The New Mexico Supreme Court has used *McDonnell Douglas* to analyze retaliation claims under the New Mexico Human Rights Act, *Juneau v. Intel Corp.,* 2006-NMSC-002, ¶ 9, 139 N.M. 12, and the New Mexico Court of Appeals has noted that "when New Mexico cases do not directly answer the question presented, we look for guidance in analogous law in other states or the federal system." *Wills,* 2015-NMCA-105, ¶ 19 (citation omitted) (noting that the New Mexico WPA was modeled after its federal counterpart). Federal Courts have used the *McDonnell Douglas* framework to analyze claims of retaliation under the federal and other state whistleblower acts, including the WPA.[2] Under *McDonnell Douglas*, Plaintiff has the initial burden of establishing a prima facie case of retaliation. *Juneau,* 2006-NMSC-002, ¶ 9.

Here, Plaintiff has alleged that Defendants retaliated against her for 1) making a protected communication under Section 10-16C-3(A), and 2) presumably for her refusal to participate in

---

[1] *See Herald v. Board of Regents of University of New Mexico,* 2015-NMCA-014; *Wills v. Board of Regents of University of New Mexico,* 2015-NMCA-105, 357 P.3d 453; *Flores v. Herrera,* 2015-NMCA-072, 352 P.3d 695; and *Janet v. Marshall,* 2013-NMCA-037, 296 P.3d 1253.

[2] *See Williams v. Court Servs. & Offender Supervision Agency for D.C.*, 110 F.Supp.3d 111, 122 (D.D.C. 2015) (applying *McDonnell Douglas* framework to Federal Whistleblower Protection Act); *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 950 (11th Cir. 2000) (applying *McDonnell Douglas* framework to Florida Whistleblower Protection Act); and *LaFond v. Gen. Physics Servs. Corp.,* 50 F.3d 165, 172 (2nd Cir. 1995) (applying *McDonnell Douglas* framework to Connecticut Whistleblower Protection Act); *Walton v. New Mexico State Land Office,* 113 F.Supp.3d 1178 (D.N.M 2015) (applying *McDonnell Douglas* framework to NMWPA).

an activity that constitutes an unlawful or improper act under Section 10-16C-3(C). Plaintiff's allegations fail to state a claim for retaliation pursuant to the WPA because she has not pled facts supporting a protected communication or linking causal connection between an alleged communication and adverse employment action. Further, Plaintiff has not pled sufficient facts to assert a claim that she refused to perform an improper act.

> **1. Plaintiff has not pled proper facts to link a causal connection between the alleged communication and adverse employment action nor has she pled facts to infer she made a protected communication.**
>
> *a. None of Plaintiff's proffered protected communications are temporally linked to the adverse employment action.*

Plaintiff asserts that she communicated unlawful acts to Defendants and that they retaliated against her in response. Complaint ¶ 100. However, Plaintiff has failed to plead specifically what her "protected" communication was and instead only refers generally to the facts stated in the Complaint which are general and encompass a wide swath of conduct. *Id.* In particular, Plaintiff merely stated that she completed audits of two separate service providers sometime in 2013, 2015 and 2016 as part of her regular duties. *See* Facts 6-9, 18. Further, Plaintiff fails to specify what conduct constituted the adverse employment action she complains of, although, Defendants assume Plaintiff intends the April 11, 2016, suspension without pay and August 11, 2016, termination to satisfy this requirement for purposes of this Motion. *See* Facts 20-21. However, Plaintiff has not alleged facts reflecting any temporal proximity or causal connection between these audits and any adverse employment action thus failing to support the essential causation element of the WPA *prima facie* test.

"[T]here must be a causal connection between the retaliatory action and the protected communication," *Walton v. N. Mex. State Land Office,* 113 F. Supp. 3d 1178, 1200 (D.N.M. 2015), and the communication must be a "substantial motivating" factor, *Maestas v. Segura,* 416

F.3d 1182, 1188 (10th Cir. 2005) (analysis of speech protected by First Amendment). "[A] causal connection is established where the plaintiff presents 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct *closely followed by adverse action*.'" *MacKenzie v. City & County of Denver,* 414 F.3d 1266, 1279 (10th Cir. 2005) (emphasis added). "Unless there is very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation." *O'Neal v. Ferguson Const. Co.,* 237 F.3d 1248, 1253 (10th Cir. 2001); *Hysten v. Burlington Northern & Santa Fe Ry.*, 296 F.3d 1177, 1183–84 (10th Cir. 2002) (an adverse employment action occurring more than three months after the protected activity was not entitled to a presumption of causation).

Plaintiff seems to plead her WPA protected communication claim solely based on temporal proximity. Plaintiff has not offered facts tying any alleged protected communications to her suspension or termination. The only potential alleged protected communication that Plaintiff could argue is temporally tied to an adverse employment action is the audit she conducted in 2016. Both the 2013 and 2015 audits are completely removed in time from both potential adverse employment actions. Plaintiff's cooperation with management decision making in the 2013 and 2015 audits further removes any connection with an alleged adverse employment action. Further, Plaintiff's assumed allegation that she engaged in a protected act by drafting the 2016 audit has absolutely no context. Plaintiff has neither alleged when she drafted the audit nor when she was told to change the findings in the audit. Accordingly, Plaintiff has not pleaded facts to show a connection between these events. Thus, under the pleading standards of *Twombly* and *Iqbal*, Plaintiff has not met her burden to plead a plausible causal connection.

> **b. The presumed allegation that the 2016 audit was a protected communication fails to establish a causal connection because Plaintiff was already being progressively disciplined over the five months before she conducted the audit.**

Plaintiff alleges that she conducted an audit in 2016 but provides no specific dates to link this presumably alleged protected communication with any adverse employment action. Plaintiff further appears to suggest that her involvement in the 2016 audit was her alleged protected communication and that she refused to change her findings as she had done in 2013 and 2015. *See* facts 18-19.

However, Plaintiff alleges she was given a Performance Improvement Plan (PIP), a "Step 2 to Termination meeting," and a notice that she was under investigation for violations of Defendant's Personal Rules and Regulations *before the 2016 audit was conducted*. *See* facts 13-15. "Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2nd Cir. 2001) (holding plaintiff's claim for retaliation for filing an EEOC complaint was not temporally linked as plaintiff was under a period of progressive discipline five months before he filed his EEOC charge).

Plaintiff here, as in *Slattery*, alleges that she made the protected communication after progressive discipline had already begun in September 2015. *See* facts 18-19. The court in *Slattery* held the plaintiff had not met his *prima facie* case due to the lack of causation which resulted from the difference in time between the beginning of plaintiff's progressive discipline and his EEOC complaint. 248 F.3d at 95. Plaintiff claimed that his placement on probation and subsequent firing followed closely in time to his EEOC complaint thus, providing the inference of retaliation. *Id.* However, the court noted that "in this case the adverse employment actions

10

were both part, and the ultimate product, of "an extensive period of progressive discipline" which began when [defendant] diminished Slattery's job responsibilities a full *five months prior* to his filing of the EEOC charges. *Id.* Thus the court held that Slattery failed to meet his burden to establish causation. *Id.*

Here, Plaintiff's temporal proximity argument is even weaker. She was put on a PIP in September 2015. She was suspended without pay on April 11, 2016, and terminated on August 11, 2016. *See* facts 18-21. Because Plaintiff's progressive discipline had already begun before she made her alleged protected communication, the inference of retaliation does not arise. Without a strong temporal connection, Plaintiff has not pleaded a plausible connection between her presumed protected activity and any adverse employment action. As demonstrated, Plaintiff has not established a sufficient temporal proximity between her presumed protected activity and any adverse employment action. Therefore, Plaintiff has failed to meet her burden and her WPA claim should be dismissed.

### c. *Performing job duties is not a protected communication.*

Plaintiff asserts that conducting audits during the course of her normal duties were protected communications. This, however, is not true because it was Plaintiff's job to conduct these audits and, thus, they cannot be protected communications under the WPA.

A protected communication is essential to a claim under the WPA. *Wills*, 2015 NMCA 105, ¶ 15. Without a protected communication, there can be no claim.

> The rule has been widely applied in "whistleblower" cases based on both federal and state statutes. As the district court observed in *Wolf v. Pacific National Bank,* 2010 WL 5888778, at *10 (S.D. Fla. Dec. 28, 2010), "it is well established in [whistleblower] cases that a plaintiff does not engage in protected activity by disclosing violations of law as part of his job responsibilities." at *10 (citing *Sasse v. United States Dep't of Labor,* 409 F.3d 773, 789–90 (6th Cir. 2005) (affirming dismissal of claim as a matter of law

> where alleged whistleblower had the job responsibility of investigating alleged violations of the law).

*Goodwin v. Dyncorp Int'l LLC,* No. 3:14-CV-116 (RV/EMT), 2015 WL 12672085, at *4 (N.D. Fla. Mar. 30, 2015) citing *Bonds v. Leavitt,* 629 F.3d 369, 382 (4th Cir. 2011) (suggesting management employee is not engaged in protected conduct if he reports a problem "as part of [his] normal duties"); *Layton v. Merit Sys. Prot. Bd.,* 392 Fed. Appx. 875, 880 (Fed. Cir. 2010) (holding Plaintiff did not make a protected disclosure under the federal WPA when conducting an audit report as the audit was part of his assigned job responsibilities).

Plaintiff asserts that she conducted audits of two companies in 2013, 2015, and 2016, and seems to suggest those audits were protected communications under the act. *See* facts 3, 8, 18. However, Plaintiff was tasked with conducting audits of these contracts as part of her job responsibilities. *Id.* As a matter of law, she cannot assert that these audits were "protected disclosures" because it was her duty to complete these audits and present them to her employers. As a result, she cannot assert that she made a protected disclosure and her WPA claim should be dismissed.

> **2. Plaintiff has not pled sufficient facts to assert a claim that she refused to perform an improper act.**

Plaintiff also claims that she was retaliated against for refusing to change the findings in the 2016 audit she performed of All Faiths as prohibited by Section 10-16C-3(C). After conducting an audit of All Faiths sometime in 2016, Plaintiff was further instructed during a PIP meeting that she needed to change her findings. *See* facts 18-19. Plaintiff asserts that she refused to change the findings in the All Faiths audit, and Defendants retaliated against her as a result of this refusal.

Plaintiff has failed again under *Twombly* and *Iqbal* to plead facts to establish a causal connection. Plaintiff pled no facts linking any adverse employment action to her refusal to change her audit findings. Further, as discussed above, Plaintiff cannot show the necessary temporal link between the two actions because it is uncontested that progressive discipline started well before her alleged refusal. *Slattery*, 248 F.3d at 95 (2nd Cir. 2001). Rather, Plaintiff merely made conclusory accusations that somehow her refusal to correct the audit's findings was protected because she believed All Faiths was overcharging Defendants. Plaintiff noted that she did not have the "wherewithal to question her supervisor" during the 2013 and 2015 audits but somehow now knew in 2016 that her supervisors were, in fact, incorrect without any factual allegation of why she now believed differently in 2016. Plaintiff's bare recitations of the WPA *prima facie* case and conclusory statements are not enough to satisfy the pleading standards under *Twombly* and *Iqbal*. Thus, her WPA claim should be dismissed.

### III. CONCLUSION

This Court should dismiss Plaintiff's WPA claim (Count I). Plaintiff failed to properly plead that she made a protected communication. She also failed to plead a plausible causal connection between either a protected communication or a refusal to participate in an activity that constituted an unlawful or improper act and an adverse employment action under the WPA.

Respectfully submitted,

*CITY OF ALBUQUERQUE*
Esteban Aguilar, Jr., City Attorney

*Approved on 3/12/18*
By: *Melissa M. Kountz*
Assistant City Attorney
Post Office Box 2248
Albuquerque, New Mexico 87103
(505) 768-4500

*German • Burnette & Associates, LLC*

*/s/ Jason M. Burnette*
JASON M. BURNETTE
ELIZABETH L. GERMAN
*Attorneys for Defendants*
11728 Linn Ave. NE
Albuquerque, NM 87123
(505) 292-9676

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 13th day of March, 2018, I filed the foregoing electronically through the CM/ECF system, which caused counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

*/s/ Jason M. Burnette*
Jason M. Burnette