IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CHANDELLE A. CHAVEZ,

        Plaintiff,

vs.                                                   No. 17-cv-813 JAP/SCY

CITY OF ALBUQERUQUE d/b/a FAMILY AND
COMMUNITY SERVICES DEPARTMENT,
DOUGLAS CHAPLIN, in his individual and official capacity,
ELLEN BRADEN, in her individual and official capacity, and
ANDREW QUINTANA, in his individual and official capacity,

        Defendants.

**<u>PLAINTIFF CHANDELLE CHAVEZ'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS</u>**

Plaintiff seeks relief from this Court for damages arising out of the unlawful employment practices in violation of the New Mexico Whistleblower Protection Act (WPA), the New Mexico Human Rights Act (HRA), and the Family and Medical Leave Act (FMLA). On March 13, 2018, Defendants' moved for partial judgment on the pleadings, seeking to dismiss Plaintiff's WPA claim. Defendants' contend that Plaintiff failed to properly plead her WPA claim because she did not establish a causal connection between her whistleblowing activity and an adverse employment action.

The primary basis of their motion is that causation has not been properly pled under the *McDonnell Douglas* burden shifting framework. That framework is an evidentiary tool designed to determine whether discriminatory intent is the *sole* reason for an adverse employment action. The plain language of the WPA, however, states that an employee need only show that retaliation was one of the reasons, even if a legitimate business justification was available, to prevail. Therefore, Defendants' motion is fatally flawed and should be denied.

Under any evidentiary standard, however, Defendants' motion is without merit and fails to recognize the well-pled factual allegations demonstrating causation based on temporal proximity, the knowledge of the Defendants, an alleged pattern of increasing intense and hostile actions, and allegations of pretext. The Court should deny the motion for partial judgment on the pleadings.

**I.     Factual Background**

This case arises out of the Defendants' discriminatory and retaliatory action of terminating Plaintiff Chandelle A. Chavez, among other adverse employment actions, from her position as a grant administrator in the City of Albuquerque's Family and Community Services Department. After her termination, Plaintiff filed this lawsuit, seeking legal relief under the New Mexico WPA, the New Mexico HRA, and the FMLA. *See generally* Plaintiff's Amended Complaint, Doc. 18. In support of Plaintiff's WPA claim, which is the only claim at issue in this motion, Plaintiff pled the following facts:

1. Plaintiff was previously disciplined, discharged, and rehired after she participated in an investigation into allegations she made that a supervisor misappropriated funds. *See* Plaintiff's Amended Complaint, Doc. 18 at ¶¶ 14-19.

2. Plaintiff expressed concerns to Defendants Ellen Braden and Douglas Chaplin that their order to "backdate time sheets and provide misleading information on timesheets for reimbursement from the federal government" was "improper." *Id.* at ¶¶ 23-25.

3. Plaintiff was retaliated against by being forbidden to participate in a federal government audit of these practices. Her concerns were later proved to be valid when the United States Department of Housing and Urban Development found Defendant City of Albuquerque's reimbursement requests were improper and the City was ordered to repay approximately $1 million. *Id*. at ¶¶ 27-28.

4. Plaintiff was then transferred to a new division of the Family and Community Services Department "because Defendant Braden led it, and Defendant Braden was tasked to document any trumped-up reason possible to discipline Plaintiff so she could ultimately be terminated." *Id.* at ¶ 32.

5. In 2013, Plaintiff included in a City of Albuquerque monitoring report that the St. Martin's Hospitality Center was charging the City of Albuquerque 1.5 "times the cost that it provided to a person for meal." Defendant Braden then ordered Plaintiff to "ignore" that finding because that was the way that Defendant Braden had always done it. *Id.* at ¶¶ 40-44.

6. Also, in 2013, Plaintiff noted in a City of Albuquerque monitoring report that All Faiths, a city contractor, "was billing the City for services for which it also billed Medicaid and the [New Mexico] Children Youth and Families Division (CYFD)." Defendant Braden again instructed Plaintiff to ignore her findings. *See* Plaintiff's Amended Complaint, Doc. 18, at ¶¶ 48-50.

7. Plaintiff made the same findings regarding the City of Albuquerque's contracts with St. Martin's Hospitality Center and All Faiths in the 2015 and 2016 City of Albuquerque monitoring reports. Plaintiff, however, was pressured into changing her findings, and reluctantly did so. *Id.* at ¶¶ 52-53.

8. In 2016, Plaintiff made the same findings in the City of Albuquerque monitoring reports for St. Martin's Hospitality Center and All Faiths. Defendant Braden against instructed Plaintiff to change her findings. Plaintiff, however, "refused to alter any of her findings." *Id.* at ¶¶ 55-56.

9. Plaintiff was later placed on a performance improvement plan, which is "evidence that she was" transferred from her old position to the "Health and Human Services [division] . . .

for the purpose of having [Defendant] Braden maliciously detail Ms. Chavez's every move. *Id.* at ¶ 63.

10. The performance improvement plan was also "put into place in direct response to [Plaintiff's] refusal to alter her findings" in the St. Martin's Hospitality Center and All Faiths monitoring reports. *Id.* at ¶ 64.

11. After being placed on a performance improvement plan, Plaintiff "was not provided any training, [] supportive tools, [or] access to anything to help her improve her performance," making the performance improvement plan "a clear attempt to begin a paper trail that would lead to [Plaintiff's] termination." *See* Plaintiff's Amended Complaint, Doc. 18, at ¶¶ 68-69.

12. On February 12, 2016, Plaintiff met with an investigator from First Line Resources, a private investigator hired by Defendant City of Albuquerque, to discuss separate harassment allegations that she made against Defendant Quintana. *Id.* at ¶ 87.

13. Around that same time, Plaintiff attended mandatory meetings with Defendant Braden, during which Defendant Braden threatened to terminate Plaintiff and ordered Plaintiff to "change her findings related to the All Faiths contract and/or change the contract with All Faith altogether so that All Faiths could continue to double bill the City for their services." *Id.* at ¶¶ 88-90.

14. Following this order, Plaintiff expressed reluctance to follow that order because she felt it was improper, and Defendant Quintana stated to Plaintiff "that she could be fired for insubordination if she did not changer her findings as instructed by [Defendant] Braden." *Id.* at ¶ 91.

15. Roughly one month later, on April 11, 2016, Plaintiff was suspended without pay. *Id.* at ¶ 92.

16. This suspension was a retaliatory action for Plaintiff's "refusal to alter her findings related to the All Faiths and St. Martin's Hospitality Center" contracts. *See* Plaintiff's Amended Complaint, Doc. 18, at ¶ 93.

17. Plaintiff was later accused of misappropriating government funds. Those allegations were "outrageous and retaliatory" and pretextual. *Id.* at ¶ 101.

18. Following the pretextual allegations, which "was merely an attempt to fabricate cause to terminated Ms. Chavez for refusing to change [the] finding[s] in her [monitoring] reports," Plaintiff was terminated on August 11, 2016. *Id.* at ¶¶ 102-103.

19. Defendant City of Albuquerque has a practice and policy of condoning supervisors that retaliate against employees for whistleblowing activity. *Id.* at ¶ 105.

## II. Legal standard for motion for judgment on the pleadings.

Motions for judgment on the pleadings are "functionally equivalent to motions to dismiss and are reviewed under the same standards" as motions brought according to Rule 12(b)(6). *Estate of Stevens ex rel. Collins v. Bd. of Comm'rs of the County of San Juan*, 53 F.Supp.3d 1368, 1372 (D.N.M. 2014). Thus, when reviewing a motion for judgment on the pleadings, courts must "'accept all well-pleaded factual allegations in the complaint as true and view them in a light most favorable to the nonmoving party,'" drawing all reasonable inferences in the plaintiff's favor. *Nelson v. State Farm Mut. Auto. Ins. Co.*, 419 F.3d 1117, 1119 (10th Cir. 2005) (quoting *Clark v. State Farm Mut. Auto. Ins. Co.*, 319 F.3d 1234, 1240 (10th Cir. 2003)). A claim will survive a motion for judgment on the pleadings if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Wagner Equip. Co. v. Wood*, 893 F.Supp.2d 1157, 1169 (D.N.M. 2012) (quoting *Ashcroft v. Iqbal*, 552 U.S. 662, 678 (2009)). A claim will only be dismissed "when it appears that the plaintiff can prove

no set of facts in support of the claims that would entitle the plaintiff to relief." *Nelson*, 419 F.3d at 1119.

   **III.   The *McDonnell Douglas* standard should not apply to New Mexico Whistleblower Protection Act cases.**

Defendants assert that the court should derive the pleading standard for the Plaintiff's WPA claim from the *McDonnell Douglas* burden-shifting framework. *See* Defendant's Motion for Partial Judgment on the Pleadings, Doc. 35 at 7. That framework, however, which is an evidentiary standard and not a pleading standard,[1] *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002), should not apply in this case because the WPA does not require a Plaintiff to prove that the *sole* reason for any adverse employment action was retaliation for engaging in protected activity.

The WPA states that it is an affirmative defense to a Plaintiff's claim if the public employer had a legitimate business purpose for disciplining an employee *and* "the retaliatory action was not *a* motivating factor." NMSA 1978, § 10-16C-4(B). In other words, to rebut the legitimate business justification affirmative defense, a Plaintiff need only show that retaliation for engaging in protected activity was one reason, not the *only* reason, for any alleged adverse employment actions.

In contrast, the *McDonnell Douglas* framework is designed "'to bring litigants and the court expeditiously and fairly to [the] ultimate question' of whether the defendant intentionally discriminated against the plaintiff." *White v. Baxter Healthcare Corp.*, 533 F3d. 381, 400 (6th Cir. 2008) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). This is done by "smoking out the single, ultimate reason for the adverse employment decision." *Wright v.*

---

[1] Despite *McDonnell Douglas* being an evidentiary rather than a pleading standard, the first prong of the standard, which examines whether a plaintiff has established a prima facie case of discrimination, is often used to evaluate the sufficiency of complaints post-*Iqbal* and *Twombly*. *See Morman v. Campbell County Mem. Hosp.*, 632 F. App'x 927, 933 (10th Cir. 2015). The decision regarding whether to apply *McDonnell Douglas* to this case, however, should be viewed through the lens of its original purpose—as an evidentiary standard which seeks to discover the sole purpose for an adverse employment action.

*Murray Guard, Inc.*, 455 F.3d 702, 720 (6th Cir. 2006) (citing *Burdine*, 450 U.S. at 254). Therefore, because the *McDonnell Douglas* framework's purpose is to identify the singular reason that an employee suffered from an adverse employment action, the framework should not apply here.

This makes sense as a matter of employment law. For example, Title VII mixed-motives cases, where an employee is required to show only that discrimination was one of the motivating factors for an employer's adverse employment decision, do not apply the *McDonnell Douglas* evidentiary framework. *See, e.g., Price Waterhouse v. Hopkins*, 490 U.S. 228, 252 (1989). In *Price Waterhouse*, the Supreme Court held that an employer may not rebut a claim of discrimination in a mixed-motives discrimination claim merely by showing "that a legitimate business reason for [the adverse employment action] was present." *Id.* Rather, in mixed-motives cases, where the allegation is that discrimination was merely one factor in the employer's decision, "[t]he employer instead must show that its legitimate reason, standing alone, would have induced it to make the same decision." *Id.* Therefore, when the "elimination of possible legitimate reasons for the defendant's action is not needed," the *McDonnell Douglas* framework does not assist in answering the ultimate evidentiary question. *White*, 533 F.3d at 401. *See also Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 552-553 (10th Cir. 1999) (applying the mixed-motives rather than *McDonnell Douglas* framework to a retaliation case where "the jury could reasonably have found both forbidden and permissible motives for defendant's decision") (internal citations and quotations omitted).

Similar to mixed-motives cases, the WPA's legitimate business justification affirmative defense only applies if the employer shows "that retaliatory action was not *a* motivating factor." NMSA 1978, § 10-16C-4(B). This language, read together with the WPA's prohibition on

"retaliatory action against a public employee *because* the public employee" engaged in protected conduct, *see id.* § 10-16C-3, requires that a WPA plaintiff need only show that blowing the whistle was one, and not the only, motive for any adverse employment action. Put simply, the WPA does not require an inquiry into whether a protected communication was the sole factor for an adverse employment action. Therefore, the *McDonnell Douglas* framework should not apply to WPA cases. *Cf. Walton v. N.M. State Land Office*, 113 F.Supp.3d 1178, 1199 (D.N.M. 2015) (analyzing a New Mexico WPA claim under the *McDonnell Douglas* framework).

This court's opinion in *Walton v. New Mexico State Land Office* should not change this conclusion. In *Walton*, Judge Browning, before quoting extensively from both the New Mexico WPA and the federal Whistleblower Protection Act, applied the *McDonnell Douglas* framework to a New Mexico WPA claim. *Id.* at 1199. While *Walton* does not state explicitly why the Court applied the *McDonnell Douglas* framework, *Walton* seems to imply that the framework applies because the New Mexico WPA and federal Whistleblower Protection Act are materially similar. *Id.* at 1200-1201. *Walton*, however, is a causation case that did not analyze whether a legitimate business justification was an affirmative defense to a WPA claim and did not analyze whether the WPA and the federal Whistleblower Protection Act have the same standard for the legitimate business justification affirmative defense. Because *Walton* failed to analyze whether the WPA requires a mixed-motives or single-motive evidentiary showing, the Court should find that it is not persuasive and refuse to follow its application of the *McDonnell Douglas* framework to New Mexico WPA cases. *See Brewster v. Cooley Assocs./Counseling and Consulting Servs., Ltd.*, 1997 WL 823634, at *1 (D.N.M. Nov. 6, 1997) (stating that because an Eight Circuit opinion did not analyze the issue before the court, the opinion was "not persuasive authority on that issue").

Even if, however, *Walton* applied to this case, *Walton*'s facts are easily distinguishable. In fact, the plaintiff's claims in *Walton* would have failed under either *McDonnell Douglas* or the mixed-motives framework because the Plaintiff was not able to show that his employer knew of the protected activity before they disciplined him:

> Walton's claims, however, run into problems on the third prong—causation. To establish that a causal connection exists, Walton may proffer evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action. Walton formally reported Bearden's discriminatory conduct to Britt on April 7, 2011 and May 6, 2011.7 Britt did not decide to terminate Walton's position, and he did not know that Walton's position would be eliminated until after Defendant Ray Powell, the Land Commissioner, approved the final determination. Elaine Olah, who served as Assistant Commissioner over the Land Office's Administrative Services Division, identified Walton's position for the RIF on March 30, 2011, and Powell approved the plan on April 6, 2011. Because Walton sent Britt the electronic-mail transmission on April 7, 2011, she submitted her formal complaint after Olah and Powell had already decided to terminate her position. Walton submitted a written memorandum to Britt, outlining her concerns about Bearden, on May 6, 2011. This complaint also occurred after Olah and Powell decided to terminate her position. ***Because Walton commenced the formal complaints after Olah and Powell made the decision to terminate Walton's position, they cannot be the cause for her termination, thus negating the causation element.***

*Walton*, 113 F. Supp. 3d at 1197–98 (emphasis added). That is not the same as this case, where Plaintiff alleges adverse employment actions taken by the same individuals whom she communicated with regarding improper activities with Albuquerque's Family and Community Services Department. Thus, even if *Walton* applied to this case, Plaintiff's complaint does not fall victim to the same causation problem as the plaintiff in *Walton*, and as discussed in Section IV, *infra*, Plaintiff has pled sufficient allegations to establish a plausible claim for relief under the WPA.

**IV.** **Plaintiff properly pled a plausible claim for relief under the New Mexico Whistleblower Protection Act.**

9

Regardless of the framework applied to this case, the Plaintiff must plead sufficient facts to establish a plausible claim for relief for each of the three elements of a WPA claim. *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1298 (10th Cir. 2018). Those elements are 1) that an employee made a protected communication, 2) that the employer took an adverse employment action against the employee, and 3) there is a causal connection between the protected communication and the adverse employment action. NMSA 1978, § 10-16C-3. Plaintiff has met that burden in this case.

Defendants do not contend that Plaintiff failed to plead sufficient facts to establish that she suffered an adverse employment action. Rather, Defendants assert that Plaintiff has failed to plead sufficient facts to establish that she made protected communications, and that Plaintiff failed to plead facts that allow for a plausible claim of causation between any protected communications and the adverse employment action. Both arguments fail. The Court should deny Defendants' motion for partial judgment on the pleadings.

### A. Plaintiff sufficiently alleged that she made communications protected by the New Mexico Whistleblower Protection Act.

Defendants contend that Plaintiff failed to plead facts that plausibly establish that she engaged in communications protected by the WPA, *see* Defendants' Motion for Partial Judgment on the Pleadings, Doc. 35, at 10, or that she pled facts establishing that she refused to perform an improper act, *id.* at 12-13. Neither contention is correct.

The WPA defines protected communication, in relevant part, as an employee "communicat[ing] to the public employer . . . information about an action or a failure to act that the public employee believes in good faith constitutes an unlawful or improper act," or as an employee "object[ing] or refus[ing] to participate in an activity, policy or practice that constitutes an unlawful or improper act . . . ." NMSA 1978, § 10-16C-3. An "unlawful or improper act" is

defined as "a practice, procedure, action or failure to act on the part of a public employer that:" 1) violates a state or federal law, rule, or regulation, 2) "constitutes malfeasance in public office," or 3) "constitutes gross mismanagement, a waste of funds, an abuse of authority or a substantial and specific danger to the public." *Id.*, § 10-16C-2(E)(1)-(3). In this case, Plaintiff has pled sufficient facts to support a plausible claim of retaliation for both disclosing improper acts and refusing to carry out an improper direction from a public employer.

For example, in paragraphs 23 through 25 of the Amended Complaint, Plaintiff stated that upon her assigned to work in the City of Albuquerque's Family and Community Services Department, she stated to her supervisors that she was concerned that the City was engaging in unlawful reimbursement processes for United States Housing and Urban Development Funds. This communication is clearly protected because it communicated to a public employer that she believed the City was engaging in unlawful billing practices for federal funds. NMSA 1978, §§ 10-16C-2(E)(1) and 10-16C-3(A). Plaintiff also alleged in paragraph 43 through 45, 48 through 51, 52, and 56 that she raised concerns with Defendant Braden that St. Martin's Hospitality Center and All Faiths were improperly billing the City of Albuquerque for the services they were providing. Similarly, these communications were protected because they were communications to a public employer regarding unlawful billing practices by city contractors, which directly relates to the "gross mismanagement" of those contracts or "a waste of [City] funds." *Id.*, at §§ 10-16C-2(E)(3) and 10-16C-3(A). And, in paragraphs 90 through 92 of the Amended Complaint, Plaintiff alleged that Defendant Braden ordered her to change the findings in her monitoring reports for the City's contracts with All Faiths and St. Martin's Hospitality Center, but she refused to do so. Plaintiff's refusal to carry out this order is also protected because she refused to participate in an

"activity, policy or practice" that also "constitutes gross mismanagement" of City contracts or a "waste of [City] funds." *Id.* at §§ 10-16C-2(E)(3) and 10-16C-3(C).

Defendants also argues that Plaintiffs' WPA claim should be dismissed because she "failed to plead specifically what her 'protected' communication was." *See* Defendant's Motion for Partial Judgment on the Pleadings, Doc. 35, at 8. A plaintiff need not, however, specifically identify which communications are alleged to be protected communications if they can be deciphered from the complaint. *Burke v. New Mexico*, 696 F. App'x 325, 335-336 (10th Cir. 2017). Therefore, there is no doubt that, if taken as true and in a light most favorable to the Plaintiff, *see Anderson v. Suiters*, 499 F.3d 1228, 1232 (10th Cir. 2007), that Plaintiff has sufficiently alleged that she made communications to her public employer that are protected by the WPA. *See Wills v. Bd. of Regents of the Univ. of N.M.*, 2015-NMCA-105, ¶ 15, 357 P.3d 453 (stating that "the WPA exclusively protects an employee's communications . . . about an unlawful or improper act").

**B. Plaintiff has alleged facts establishing a causal connection between her protected communications and the adverse employment actions that she suffered.**

Defendants also contend that Plaintiff has failed to plead sufficient facts to establish a causal connection between her protected communications and eventual placement on unpaid leave and termination. This contention is made in three arguments: 1) Plaintiff failed to allege facts establishing a temporal connection between a protected communication and any adverse employment action, *see* Defendant's Motion for Partial Judgment on the Pleadings, Doc. 35, at 8-9, 2) Plaintiff's performance improvement plan is evidence of progressive discipline that negates any alleged evidence of causation, *id.* at 10-11, and 3) Plaintiff's claim is barred by the normal job duties exception to whistleblower protection laws, *id.* at 11-12. All three arguments are without merit. Plaintiff has pled sufficient facts to establish a causal connection between her protected communications and the adverse employment actions she suffered.

### i. The temporal proximity between Plaintiff's refusal to change her contained in the monitoring reports and her suspension without pay is evidence of causation.

Defendants first argue that Plaintiff failed to show a temporal proximity between any protected communication and adverse employment action. *Id.* at 8-9. Defendant is correct that "a causal connection is established where the plaintiff presents 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1279 (10th Cir. 2005). Defendant, however, failed to recognize that Plaintiff pled a less than one-month difference between the time she was ordered to change her findings of improper billing practices in her monitoring reports, the time when she refused to do so, and her placement on unpaid leave.

In paragraph 90 through 91 of the Amended Complaint, Plaintiff alleges that after February 12, 2016, Defendant Braden ordered her to change the findings that she made in her All Faiths monitoring report. Plaintiff also alleges that this order was made as a condition of employment. Plaintiff then alleges in paragraph 91 that refused to carry out this order, despite Defendant Quintana's warning that her failure to do so may be insubordination subjecting her to termination. In paragraphs 92 and 93 of the Amended Complaint, Plaintiff pleads that less than one month later, on April 11, 2016, she was placed on unpaid administrative leave in retaliation for refusing to change her findings of improper contract management and billing practices.

"[If] the adverse action occurs in a brief period up to one and a half months after the protected activity, temporal proximity alone will be sufficient to establish the requisite causal inference" required by the WPA. *Conroy v. Vilsack*, 707 F.3d 1163, 1181 (10th Cir. 2013) (citing *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999)). In this case, the time between Plaintiff's refusal to follow an improper order and her placement on unpaid leave was approximately one month. "Where as here, the temporal proximity is close, it is a circumstance

that should be given considerable weight." *Trujillo v. PacifiCorp.*, 524 F.3d 1149, 1157 (10th Cir. 2008). *See also Annett v. Univ. of Kan.*, 371 F.3d 1233, 1239-40 (10th Cir. 2004) (stating that a prima facie case was established where a university declined to interview and hire a plaintiff who prevailed in a lawsuit only one month before); *Ramirez v. Okla. Dep't of Mental Health*, 41 F.3d 584, 596 (10th Cir. 1994) (holding that a one and one-half month period between the plaintiff's protected activity and an adverse employment action is, by itself, sufficient evidence of causation); *Gonzales v. N.M. Dep't of Health*, 2000-NMSC-029, ¶ 43, 129 N.M. 586 (explaining that testimony that the plaintiff was physically isolated from her peers "shortly after filing her discrimination complaint" was sufficient evidence of retaliation).

Plaintiff then alleges that she was terminated on August 11, 2016, and that her termination was in retaliation for her refusal to change the findings she submitted in her monitoring reports, which approximately six months later. *See* Amended Complaint, Doc. 18, at ¶¶ 102-104. Generally, a six-month gap between protected activity and an adverse action is not sufficient temporal proximity evidence of retaliation. *See Haynes v. Level 3 Comm'ns, LLC*, 456 F.3d 1214, 1228 (10th Cir. 2006). But, when an employee is on leave, "the special circumstances suggest that [Courts] should treat [such a scenario] as a close-proximity case." *Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1217 (10th Cir. 2003). Therefore, Plaintiff has pled sufficient close-proximity facts to establish a causal connection between her refusal to change the findings she submitted in her monitoring reports and her suspension and eventual termination.

### ii. Plaintiff's performance improvement plan does not negate the other evidence of causation contained in the complaint.

Defendants next contend that Plaintiff's WPA claim should be dismissed because the City of Albuquerque began a program of progressive discipline before she engaged in any protected communications. *See* Defendants' Motion for Partial Judgment on Pleadings, Doc. 35, at 10-11.

In support of this argument, Defendants cite to *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87 (2d Cir. 2001). *Slattery*, however, is distinguishable from this case.

In *Slattery*, the Second Circuit determined that the plaintiff failed to establish that there was a causal connection between his filing of an EEOC complaint and his eventual probation and termination. *Id.* at 94-95. In that case, the plaintiff's only evidence of causation was temporal proximity. *Id.* at 95. But, the employer in *Slattery* had begun to discipline the plaintiff five months before he filed his EEOC complaint. *Id.* Therefore, because the plaintiff's only evidence of causation was the temporal proximity between the filing of EEOC complaint and adverse action by the employer, and because the adverse actions commenced before he filed an EEOC complaint, Plaintiff failed to establish causation. *Id.* Those facts are materially different than those pled in this case.

In this case, Plaintiff had been blowing the whistle on mismanagement of City of Albuquerque contracts beginning in 2013 and continuing through her refusal to alter her monitoring reports in 2016. It was not, however, until 2015 that Plaintiff was placed on her performance improvement plan. And, unlike the plaintiff in *Slattery*, Plaintiff was not subjected to "gradual adverse job actions." *Slattery*, 248 F.3d at 95. Rather, Plaintiff alleges that she was placed on a performance improvement plan, given no support or criteria to meet, and then suspended without pay and terminated only after she refused to change the findings submitted in her monitoring reports. Therefore, *Slattery* is inapposite to this case and should not be accepted as persuasive authority that Plaintiff's 2015 performance improvement plan, which itself is alleged to be part of a pattern of retaliatory behavior, requires dismissal of her WPA claim.

### iii. The communications made within an employee's normal job duties exception to whistleblower protection laws does not bar Plaintiff's New Mexico Whistleblower Protection Act claim.

Defendant also asserts that Plaintiff's WPA claim should be dismissed because her alleged protected communications were made in the normal course of her job duties. *See* Defendants' Motion for Partial Judgment on the Pleadings, Doc. 35, at 11-12. The basis for this argument is *Huffman v. Office of Personnel Management*, 263 F.3d 1341 (Fed. Cir. 2001), in which the Federal Circuit determined that under the federal Whistleblower Protection Act, and employee is not engaged in protected activity when making "reports . . . as part of an employee's assigned normal job responsibilities." *Id.* at 1344. In 2012, however, Congress overruled *Huffman* when it stated that an employee is not excluded from whistleblower protection simply because her disclosure is made during the normal course of her duties. *Leshinsky v. Telvent GIT, S.A.*, 942 F.Supp.2d 432, 449 (S.D.N.Y. 2013); *Walton v. N.M. State Land Office*, 49 F.Supp.3d 920, 968 (D.N.M. 2014) (explaining that a similar argument by the defendant in that case "suffer[ed] from a fatal flaw" because *Huffman* had recently been overruled by Congress). *See also* 5 U.S.C. § 2302(f)(2) (stating that "[i]f a disclosure is made during the normal course of duties of an employee, the principal job function of whom is to regularly investigate and disclose wrongdoing . . . , the disclosure shall not be excluded" from whistleblower protection). Therefore, because Defendants' argument is based on a doctrine that has been expressly rejected by Congress, it should be disregarded.

Even if the normal job duties exception applied to WPA cases, Defendants' fail to establish that Plaintiff's WPA claim should be dismissed. The underlying basis of the normal job duties exception is that an employee may not benefit from whistleblower protections unless that employee "risked his personal job security" by making the disclosure. *Willis v. Dep't of Agriculture*, 141 F.3d 1139, 1144 (Fed. Cir. 1998). *See also Sasse v. U.S. Dep't of Labor*, 409

F.3d 773, 780-781 (6th Cir. 2005). In this case, Plaintiff jeopardized her personal job security when she refused to alter the findings she submitted as part of her monitoring reports, because she received an order to do so as a condition of continued employment. *See* Plaintiff's Amended Complaint, Doc. 18, at ¶ 90. The First Circuit has also held that the normal job duties exception should not be examined in a vacuum, but rather it should look to the employee's motivation when the disclosure was made. *Harrison v. Granite Bay Care, Inc.*, 811 F.3d 36, 51 (1st Cir. 2016). In other words, if the disclosure was motivated by a good faith attempt to stop an improper practice, then the normal job duties exception should not apply. *Id.* It can be properly inferred from the Plaintiff's allegations that she refused to alter the findings in her monitoring reports because she believed that doing so would be improper. Thus, if one assumes that the normal job duties exception applies to WPA cases, Plaintiff risked her job when she refused to follow Defendant Braden's order to alter her findings, and she should be afforded whistleblower protection.

### iv. Plaintiff's complaint includes allegations that establish a causal connection between her protected communications and adverse employment actions.

Finally, Defendants assert that "Plaintiff seems to plead her WPA protected communication claim solely based on temporal proximity." Defendants' Motion for Partial Judgment on the Pleadings, Doc. 35, at 9. That is incorrect. Plaintiff's Amended Complaint is replete with factual allegations that could establish a causal connection between her protected activity and adverse employment actions through evidence other than temporal proximity.

For example, the New Mexico Supreme Court has recognized that "early events [described in a complaint] can be considered as context for what followed." *Juneau v. Intel Corp.*, 2006-NMSC-002, ¶ 14, 139 N.M. 12 (2005). Such events can then be considered causation evidence when a plaintiff "claims he was set up for termination." *Id.* Here, Plaintiff's complaint alleges that she was previously terminated for making a complaint against a supervisor, *see* Plaintiff's

Amended Complaint, Doc. 18, at ¶¶ 16-19, and that she was transferred to the Health and Human Services division so that Defendant Braden could micromanage her performance and eventually terminate her, *id.* at ¶ 32.

A plaintiff may also show a causal connection by alleging an increase in frequency and intensity of retaliation after a complaint of improper activities. *Juneau*, 2006-NMSC-002, at ¶ 18. Plaintiff's complaint contains such allegations, extensively detailing the retaliation that she faced over the five years she was employed in the City of Albuquerque's Family and Community Services Division, culminating in the improper order to alter her monitoring reports as a condition of employment, Defendant Quintana's threat that her failure to do so could be grounds for termination, being suspended without leave, being accused of pretextual improper actions, and Plaintiff's eventual termination.

The courts also recognize that a causal connection may be established by demonstrating that "a pattern of retaliatory conduct beg[an] soon after" the plaintiff engaged in protected activity. *Marx v. Schnuck Mkts., Inc.*, 76 F.3d 324, 329 (10th Cir. 1996). In her complaint Plaintiff alleges several instances where a pattern of retaliatory conduct sprouted after she engaged in protected activity. For example, Plaintiff alleges that she was terminated after she complained that a supervisor was mismanaging government funds. *See* Plaintiff's Amended Complaint, Doc. 18, at ¶¶ 16-19. Plaintiff also alleges that was placed on a performance improvement plan after engaging in retaliatory conduct. *Id.* at ¶ 64. And that she was threatened, suspended, falsely accused of mishandling government funds, and terminated after she refused to follow a direction which she believed was improper. Additionally, a plaintiff may demonstrate causation by showing that the individuals that ordered the adverse employment actions had knowledge of the plaintiff's protected conduct. *Hysten v. Burlington N. and Santa Fe Ry. Co.*, 296, F.3d 1177, 1184 (10th Cir. 2002)

(stating that there was no causal connection because plaintiff failed to show that "those who caused the alleged retaliatory act to occur . . . [had] been aware of the specific activity"). In this case, Plaintiff has alleged that the individuals whom she communicated her concerns of improper activities to—Defendants Braden, Chaplin, and Quintana—were the driving force behind the adverse actions she suffered.

Despite Defendants' contention, Plaintiff's complaint contains numerous factual allegations that, if true and when viewed in a light most favorable to the Plaintiff, are evidence of a causal relationship between Plaintiff's protected communications and her eventual termination. Therefore, Plaintiff has sufficiently pled a claim for violations of the WPA that is plausible on its face.

## V. Conclusion

Defendants' motion for partial judgment on the pleadings seeking to dismiss Plaintiff's WPA claim should be denied.

Dated: April 6, 2018

Respectfully submitted,

/s/ *Nicholas T. Hart*

Vincent J. Ward
Nicholas T. Hart
**FREEDMAN BOYD HOLLANDER GOLDBERG URIAS & WARD P.A.**
20 First Plaza NW, Suite 700
Albuquerque, NM 87102
Phone: (505) 842-9960
Fax: (505) 842-0761
*vjw@fbdlaw.com*
*NickH@fbdlaw.com*

*Attorneys for Plaintiff Chandelle Chavez*

# CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2018, I filed the foregoing electronically through the CM/ECF system, which caused counsel to be served by electronic means as more fully reflected on the Notice of Electronic Filing.

Ethan D Watson
GermanBurnette & Associates, LLC
11728 Linn Ave. NE
Albuquerque, NM 87123
505-292-9676
Fax: 505-275-1283
Email: ethan@germanassociates.com

Samantha M. Hults
City of Albuquerque, Legal Department
PO Box 2248
Albuquerque, NM 87103
(505) 768-4500
Fax: (505) 768-4400
Email: shults@cabq.gov

Elizabeth L. German
GermanBurnette & Associates, LLC
11728 Linn Ave. NE
Albuquerque, NM 87123
505-292-9676
Fax: 505-275-1283
Email: Beth@germanassociates.com

Jason Michael Burnette
GermanBurnette & Associates, LLC
11728 Linn Ave. NE
Albuquerque, NM 87123
505-292-9676
Fax: 505-275-1283
Email: jason@germanassociates.com
*Counsel for Defendants*


*/s/ Nicholas T. Hart*
 Nicholas T. Hart