**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**CHANDELLE A. CHAVEZ**,
           Plaintiff,

vs.                                            No. 17-CV-813 JAP/SCY

**CITY OF ALBUQUERQUE d/b/a FAMILY**
**AND COMMUNITY SERVICES DEPARTMENT**,
**DOUGLAS CHAPLIN in his personal and official capacity,**
**ELLEN BRADEN, in her personal and official capacity, and**
**ANDREW QUINTANA, in his personal and official capacity,**
           Defendant.

**MEMORANDUM ORDER AND OPINION**

On August 9, 2017, Plaintiff Chandelle A Chavez ("Plaintiff") filed in the Second Judicial District of

the State of New Mexico a Complaint naming as defendants the City of Albuquerque ("City") d/b/a/ Family

and Community Services Department ("FCSD") and, in their personal and professional capacity, Douglas

Chaplin, Ellen Braden, and Andrew Quintana (collectively "Defendants"). (Doc. 1-1).[1] The five-count

Complaint alleged claims for violations of the New Mexico Whistleblower Protection Act, Family Medical

Leave Act, Fraud Against Taxpayers Act, the New Mexico Human Rights Act, and Retaliatory Discharge

under New Mexico common law. On August 9, 2017, Defendants filed a Notice of Removal to federal court

based on federal question jurisdiction.[2] On August 16, 2017, Defendants Answered the Complaint.[3] On

October 17, 2017, Plaintiff filed a motion to amend her complaint.[4] The Court granted the motion to amend.[5]

On October 25, Plaintiff filed an Amended Complaint ("Amended Complaint").[6] In the Amended Complaint,

Plaintiff restated her claims under the New Mexico Whistleblower Protection Act, Family Medical Leave Act,

---

[1] COMPLAINT FOR VIOLATIONS OF THE WHISTLEBLOWER PROTECTION ACT, FAMILY MEDICAL LEAVE ACT, FRAUD AGAINST TAXPAYERS ACT, NEW MEXICO HUMAN RIGHTS ACT, AND RETALIATORY DISCHARGE. (Doc. 1-1)
[2] NOTICE OF REMOVAL (Doc. 1).
[3] ANSWER TO COMPLAINT FOR VIOLATIONS OF THE WHISTLEBLOWER PROTECTION ACT, FAMILY MEDIAL (SIC) LEAVE ACT, FRAUD AGAINST TAXPAYERS ACT, NEW MEXICO HUMAN RIGHTS ACT, AND RETALIATORY DISCHARGE (Doc. 6) ("Answer").
[4] PLAINTIFF'S UNOPPOSED MOTION REQUESTING LEAVE TO FILE AMENDED COMPLAINT (Doc. 12)
[5] ORDER GRANTING UNOPPOSED MOTION REQUESTING LEAVE TO FILE AMENDED COMPLAINT (Doc. 17).
[6] AMENDED COMPLAINT FOR VIOLATIONS OF THE WHISTLEBLOWER PROTECTION ACT AND FAMILY MEDICAL LEAVE ACT (Doc. 18) ("Amended Complaint").

and the New Mexico Human Rights Act.[7] The Defendants answered the Amended Complaint on November

13, 2017.[8]

On March 13, 2018, Defendants filed a MOTION AND MEMORANDUM FOR PARTIAL

JUDGMENT ON THE PLEADINGS (Doc. 35) ("Motion"). In their Motion, Defendants ask the Court to

dismiss on the pleadings Count 1of the Amended Complaint for Violation of New Mexico Whistleblower

Protection Act, NMSA 1978 §§ 10-16C-1 to -6 (2010) ("NMWPA"), for failure to state a claim for which

relief can be granted. Plaintiff responded and opposed the Motion.[9]  On April 27, 2018, Defendants replied.[10]

Because Plaintiff's NMWPA claim is plausible, the Court will deny Defendants' Motion.

## II.     LEGAL STANDARD

At any time after the pleadings are closed, but before trial begins, a party may move for judgment on

the pleadings under Fed.R.Civ.P. 12(c).  A motion for judgment on the pleadings is evaluated under the same

standard used in deciding Rule 12(b)(6) motions to dismiss.  *See Atlantic Richfield Co. v. Farm Credit Bank of

Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000).

A Rule 12(b)(6) motion "tests the sufficiency of the allegations within the four corners of the

complaint." *Romero v. United States*, 159 F. Supp. 3d 1275, 1279 (D.N.M. 2015) (citation omitted).  When

considering a Rule 12(b)(6) motion, the court must accept as true all well-pleaded factual allegations in the

complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable

inferences in the plaintiff's favor. *Smith v. United States,* 561 F.3d 1090, 1098 (10th Cir. 2009).  The

allegations must "state a claim to relief that is plausible on its face." *Id.* "The claim is plausible only if it

contains sufficient factual allegations to allow the court to reasonably infer liability. *Moya v. Garcia,* ----F.3d -

----, 2018 WL 1916322, *1 (10th Cir. April 24, 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The term "plausible" does not mean "likely to be true."  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir.

2008).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court [a]

---

[7] The Amended Complaint eliminated Plaintiff's claims under the Fraud Against Taxpayers Act and Retaliatory Discharge under New Mexico common law.

[8] ANSWER TO AMENDED COMPLAINT FOR VIOLATIONS OF THE WHISTLEBLOWER PROTECTION ACT AND FAMILY MEDICAL LEAVE ACT (Doc. 20).

[9] PLAINTIFF CHANDELLE CHAVEZ'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS (Doc. 42) ("Response").

[10]DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION AND MEMORANDUM FOR PARTIAL JUDGMENT ON THE PLEADINGS (Doc. 47).

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 556). The factual allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

A federal court exercising supplemental jurisdiction "applies the substantive law . . . of the forum state." *BancOklahoma Mort. Corp. v. Capital Title Co., Inc.*, 194 F.3d 1089, 1103 (10th Cir. 1999). However, when determining whether dismissal of a cause of action is appropriate under 12(c) of the Federal Rules of Procedure, a federal court applies federal law. *See Stickley v. State Farm Mut. Auto Ins. Co.*, 505 F.3d 1070, 1076 (10th Cir. 2007). The sufficiency of a pleading is a procedural issue governed by the notice requirements of federal law, but a court applies the substantive law of the state to analyze the underlying claims*. Id.* (applying federal standards to summary judgment)*; see also Brokers' Choice of America, Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1099 (10th Cir. 2017) (applying federal standards to motion to dismiss).

## II.     FACTUAL BACKGROUND

In 2013, after taking FMLA leave, Plaintiff was transferred from her position at FCSD as a grant administrator to a position in FCSD Health and Human Services Division.  (Doc. 18, ¶¶ 21, 30, 31). Defendant Douglas Chaplin is the acting director of FCSD.  (Doc 18, ¶ 9).  Defendant Ellen Braden is the division manager for FCSD Health and Human Services Division (hereinafter, "Health and Human Services") (Doc 18, ¶ 10).  Ms. Braden was Plaintiff's supervisor. (Doc 18, ¶¶ 32, 44, 45).  Defendant Andrew Quintana is a Senior Personnel/Labor Relations Officer.[11] (Doc 18, ¶ 11).

As part of her job duties, Plaintiff conducted audits on service providers. (Doc 18, ¶¶ 40, 46).  In 2013, Plaintiff audited a contract the City had with St. Martin's Hospitality Center and discovered that St. Martin's Hospitality Center was charging the City one and half times the cost of the amount it spent for providing meals to the homeless. (Doc. 18, ¶ 40, 42). When Plaintiff included what she believed was an improper billing practice in her audit report, Ms. Braden told Plaintiff to ignore it "because that's how we have always done it."  (Doc. 18, ¶44).  Ms. Braden had conducted the audit of St. Martin's Hospitality Center before Plaintiff took over it. (Doc. 18, ¶ 43). Also in 2013, Plaintiff audited All Faiths for services it provided to individuals and families in its Safe House Program. (Doc. 18, ¶¶ 46, 47). Her audit revealed that All Faiths was

---

[11] The pleading does not identify whether he works for the Health and Human Services Division.

billing both the City and Medicaid for the same services.  (Doc 18, ¶ 48). When she included these findings in her report, Ms. Braden asked Plaintiff to ignore the findings.  (Doc 18, ¶¶ 49, 50). Being new to her position, and lacking training, Plaintiff did not question Ms. Braden. (Doc. 18, ¶ 51).

In 2015, Plaintiff performed similar audits of St. Martin's Hospitality Center and All Faiths.  (Doc. 18, ¶ 52) She made the same findings regarding what she believed to be overbilling and double billing. *Id.* Again, upon request by Ms. Braden, Plaintiff "reluctantly" changed her findings. (Doc. 18, ¶ 53).  In 2013, and 2015, when Plaintiff altered her findings, she felt as though she had no choice but to comply with Ms. Braden's instructions because she did not have the experience to question her supervisor. (Doc. 18, ¶¶ 45, 51).

In July 2015, Plaintiff filed an EEOC complaint against FCSD alleging retaliation for taking leave under the FMLA to care for her sick daughter. (Doc 18, ¶¶ 54, 59).  In September 2015, Plaintiff filed an additional EEOC charge alleging retaliation for filing her EEOC complaint. (Doc 18, ¶ 60). That same month, Plaintiff was placed on a performance improvement plan (PIP). (Doc 18, ¶ 61). The six-page PIP was backdated to 2013, the date Plaintiff was transferred to the Health and Human Services Division. (Doc 18, ¶ 62). Plaintiff was told that the PIP was not discipline, but was a means to help her improve her performance. (Doc. 18, ¶ 67). However, after being placed on PIP, Plaintiff was not provided with any meaningful way to improve her performance. (Doc. 18, ¶ 68).  Plaintiff asserts that the PIP demonstrates that her transfer to Health and Human Services was part of a plan to begin a paper trail that would lead to her termination. (Doc. 18, ¶ 69).  On November 19, 2015, Plaintiff was placed on notice that the City was investigating her for violation of its Personnel Rules and Regulations for not meeting its expectation in the PIP. (Doc. 18, ¶ 72).

In 2016,[12] Plaintiff conducted another audit of St. Martin's Hospitality Center and All Faiths. (Doc. 18, ¶ 55) ("2016 audit"). Again, she found evidence of overbilling and double billing. (Doc. 18, ¶ 52). This time, however, Plaintiff refused to alter any findings in her report. (Doc. 18, ¶ 56).

Around February 2016, Ms. Braden held weekly meetings with Plaintiff, and as an action item to improve Plaintiff's performance, Ms. Braden asked Plaintiff during one of these meetings to change her findings relating to the All Faith's Contract and/or change the Contract.  (Doc. 18, ¶¶ 88, 90). Plaintiff knew or believed that her supervisor's request "was improper, illegal, and in violation of the written contract

---

[12] The pleadings give a year but not a date for the 2016 audit.

between these entities and Defendant City," so she did not change her findings. (Doc. 18, ¶ 56). At some

unspecified date, Mr. Quintana also spoke with Plaintiff about changing her findings, informing her that if she

did not change her findings as instructed by Ms. Braden, she could be fired for insubordination. (Doc. 18, ¶

91).

On April 11, 2016, Plaintiff was suspended without pay. (Doc 18, ¶ 92). The stated reason for the

suspension was that Plaintiff did not follow through with projects and was not meeting deadlines. *Id.* On July

5, 2016, Plaintiff received notice that she was being accused of misappropriating funds. (Doc. 18, ¶ 94). On

August 11, 2016, Plaintiff's employment was terminated. (Doc. 18, ¶ 103). Plaintiff alleges that the suspension

and termination were retaliation for Plaintiff's refusal to alter her findings related to All Faith's and St.

Martin's Hospitality Center. (Doc. 18, ¶¶ 93, 113).

**III. ANALYSIS**

In evaluating Plaintiff's NMWPA claim, Defendants urge the Court to adopt the federal evidentiary

test elucidated in *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973). The test, commonly called the

*McDonnell Douglas* test, is a three-part heuristic for evaluating discrimination and retaliation claims. *Crow v.*

*ADT Sec. Services*, 649 F.3d 1189, 1195 (10th Cir. 2011). The test uses the following burden-shifting

framework: (1) the plaintiff must establish a prima facie case of discrimination or retaliation; (2) the defendant

must come forward with a legitimate, non-discriminatory rationale for the adverse employment action; and (3)

if the defendant meets its burden, the plaintiff must show that the defendant's proffered rationale is pretextual.

*Id.*

The Supreme Court has expressly rejected the use of the *McDonnell Douglas* test in evaluating the

sufficiency of pleadings, observing that it is "an evidentiary standard, not a pleading requirement."

*Swierkiewicz v. Sorema*, 534 U.S. 506, 509 (2002). Although the Supreme Court stated a court should not

apply the *McDonnell Douglas* test at the pleading stage of the proceedings, the requirement of the test's first

prong is helpful in determining a motion for judgment on the pleadings. *See Morman v. Campbell County*

*Memorial Hosp.*, 632 F. App'x. 927, 933 (2015). While a plaintiff need not establish a prima facie case in a

retaliation complaint, "the elements of each alleged cause of action help to determine whether Plaintiff has set

forth a plausible claim*" Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (citing *Swierkiewicz,*

534 U.S. at 515). In evaluating Plaintiff's NMWPA claim on a 12(c) motion, the Court will examine only

whether the Plaintiff has pled a sufficient factual basis to establish the elements of a NMWPA claim.

The New Mexico legislature enacted the NMWPA "'to encourage employees to report illegal

practices without fear of reprisal by their employers.'" *Flores v. Herrera*, 384 P.3d 1070, 1072 (N.M. 2016)

(quoting *Janet v. Marshall*, 296 P.3d 1253, 1258 (N.M. Ct. App. 2012)). It forbids a public employer from

retaliating against a public employee "because the public employee communicates information about conduct

that the public employee believes in good faith to be unlawful or improper, provides information to a public

body as part of an inquiry into an unlawful or improper act, or 'objects to or refuses to participate in an activity

. . . that constitutes an unlawful or improper act.'" *Flores*, 384 P.3d at 1072 (quoting from NMSA§10-16C-3).

An unlawful or improper act is a "practice, procedure, action or failure to act on the part of a public employer

that: (1) violates a federal law, a federal regulation, a state law, a state administrative rule or a law of any

political subdivision of the state; (2) constitutes malfeasance in public office; or (3) constitutes gross

mismanagement, a waste of funds, an abuse of authority or a substantial and specific danger to the public."

NMSA § 10-16C-2(E)(1)-(3). The unlawful act must be one concerning an activity that serves the public

interest; it does not include communications regarding a supervisor's personal treatment of an employee. *Wills*

*v. Board of Regents of University of New Mexico*, 357 P.3d 453, 458 (N.M. Ct. App. 2015) (analogizing the

federal WPA and the NMWPA). A "'retaliatory action' means taking any discriminatory or adverse

employment action against a public employee in the terms and conditions of public employment." NMSA §10-

16C-2(D).

Defendants contend that Plaintiff's claim under the NMWPA is unsupported because Plaintiff does

not specify a protected communication or protected activity. Defendants further allege that the pleading fails

because Plaintiff has not established the necessary causality between a protected communication or activity

and a retaliatory action. None of these arguments has merit.

While Plaintiff's could have drafted her pleading more clearly, the necessary elements are present in

the Amended Complaint. Plaintiff asserts that a protected activity occurred when she did not change the

findings in her 2016 audit report that All Faiths billed both the City and Medicaid for services it provided to

the City. (Doc. 18, ¶¶ 48, 52, 55, 56). She alleges that she believed that the double billing was improper and

illegal and so refused to change the report as asked by her supervisor. (Doc. 18, ¶ ¶ 56, 93). Plaintiff contends

that when she refused to change the report, her employers retaliated against her by terminating her

employment. (Doc.18, ¶ 93).

The Amended Complaint also gives the Defendants notice as to the date and time of Plaintiff's

protected activity.[13] Although Plaintiff did not indicate the precise date she prepared the 2016 audit, throughout

the Amended Complaint Plaintiff refers to the relevant audit as the 2016 audit, and indicates it was prepared in

2016. (Doc. 18, ¶¶ 55, 93).  Based on the facts in her pleading, the audit was prepared sometime before

February 2016.  More importantly, Plaintiff claims that the protected act under the NMWPA occurred not

when she prepared the audit but in February 2016 when she did not comply with her supervisor's demands to

change it. (Doc. 18, ¶¶ 90, 91). A refusal to obfuscate or hide a potentially wrong billing practice falls within

the NMWPA's definition of an unlawful act. *See* § 10-16C-2(E)(1)-(3) (defining in part an unlawful or

improper act as a practice or procedure that violates a federal or state law or regulation, gross mismanagement,

a waste of funds or an abuse of authority).

Next, Defendants argue that the audit cannot be a protected communication because the audit was part

of Plaintiff's job duties.  For this proposition, the Defendants cite a Federal Circuit case, *Layton v. Merit Sys.*

*Prot. Bd.,* 392, Fed. Appx 875, 880 (Fed. Cir. 2010). In examining the federal WPA, *Layton* held a plaintiff did

not and could not make a protected disclosure when creating an audit report because it was part of his assigned

duties. This case is not on point. *Layton* was superseded by statute in 2012 when Congress amended the federal

WPA with the Whistleblower Protection Enhancement Act of 2012. Even if *Layton* was still good law, the

protected activity here occurred when Plaintiff objected or refused to participate in what she believed to be an

illegal act, changing her audit report. The NMWPA includes within its definition of protected activity an

"object[ion] to or refus[al] to participate in an activity . . . that constitutes an unlawful or improper act. NMSA

§ 10-16C-3(C).

Causality is the focus of Defendants' next argument.  A plaintiff may establish causality between her

protected act and a retaliatory action through direct evidence or through circumstantial evidence.  *See Smith v.*

---

[13] Defendants assert that much of the facts alleged in Plaintiff's NMWPA claim fall outside the statute of limitations period.
However, in ¶ 114 Plaintiff isolates the pertinent facts as those leading and resulting from her refusal to change the 2016 audit.

*Maschner*, 899 F.2d 940, 949 (10th Cir. 1990) (when direct evidence is not present, a claim may be established through circumstantial evidence). Defendants argue that Plaintiff's Amended Complaint does not establish causality through either. The Court finds that the Amended Complaint demonstrates both.

In her Amended Complaint, Plaintiff identifies the protected act as her refusal to change her findings in the 2016 audit that All Faiths had double billed the City and Medicaid. Plaintiff alleges that when she refused, Mr. Quintana, a Senior Personnel/Labor Relations Officer with the City, threatened her with possible termination based on insubordination. At the pleading stage of the case, the Court must accept this factual allegation as true. Credibility determinations are an evidentiary issue for trial. The threat by a senior official of the city when considered with the relatively short time between the alleged protected act, the imposition of administrative leave, and the Plaintiff's termination is factually sufficient evidence of direct causation.

Plaintiff alleges further that an inference of retaliation may be made based on the close proximity between her actions and the Defendants' actions. *See, e.g., Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (finding one and half months between the protected activity and the adverse employment action may establish causation). No more than two months separate Plaintiff's protected activity and Defendants' alleged retaliatory action. Defendants argue that no inference of causation can be made on this basis because such an inference is extinguished by Plaintiff's progressive discipline, which began well before the 2016 audit. This argument ignores the standard for a 12(c) motion, which requires the Court to accept all facts alleged by the Plaintiff as true and to resolve all inferences in her favor. In her Amended Complaint, Plaintiff alleges that the progressive discipline was part of a pattern of retaliation that began when she filed an EEOC claim based on an alleged violation of the FMLA.[14] A pattern of retaliatory conduct that begins after a protected activity and culminates later in discharge may demonstrate causation. *Marx v. Schnuck Mkts., Inc.*, 76 F.3d 324, 329 (10th Cir. 1996). Assuming Plaintiff's facts are true, as this Court must, Plaintiff's first protected activity occurred in July 2015, and each of her protected activities thereafter was followed approximately two months later by adverse employment action. This alleged pattern of events describes a

---

[14] These facts include the following: 1) Plaintiff filed an EEOC complaint in July; 2) two months later, the City began a PIP plan; 3) Plaintiff filed a second EEOC complaint alleging that the PIP plan was retaliation for her first EEOC claim; 4) two months later, the City began progressive discipline followed by the events alleged in her NMWPA claim.

temporal link between Plaintiff's actions and Defendants' responses that supports an inference of retaliation. In sum, Plaintiff has alleged both direct and circumstantial evidence of causation.

Finally, Defendants claim that Plaintiff has not established causation because the NMWPA requires a plaintiff to show that her protected activity was the sole reason for the retaliatory action. Assuming arguendo that the statute requires the Plaintiff to allege that the retaliatory action had no basis other than the protected activity, the Amended Complaint explicitly does this.

Plaintiff's Amended Complaint provides facts supporting her NMWPA claim of a protected activity, a retaliatory action, and a causal connection.

IT IS ORDERED that the Defendants' Motion for Partial Judgment on the Pleadings as to Count 1, Violation of the New Mexico Whistleblowers Protection Act, is DENIED.

_____
SENIOR UNITED STATES DISTRICT JUDGE